UNITED STATES of America

v.

DOLLAR SAVINGS BANK.

UNITED STATES of America

v.

PITTSBURGH NATIONAL BANK.

Civ. A. Nos. 80–159, 80–160.

United States District Court,
W. D. Pennsylvania.

April 15, 1980.

Thomas A. Daley, Asst. U. S. Atty., Pittsburgh, Pa., for plaintiff.

No counsel of record for defendants.

Vincent C. Murovich, Pittsburgh, Pa., for intervenors.

## OPINION

ROSENBERG, District Judge.

The United States of America and Timothy H. Myers, Special Agent of the Internal Revenue Service (IRS) acting through the United States Attorney, seek judicial enforcement of IRS summonses which Special Agent Myers issued to and served Dollar Savings Bank and Pittsburgh National Bank at Civil Action No. 80–159 and Civil Action No. 80–160, respectively. These actions were consolidated by Order of Court at the hearing on March 4, 1980, after stipulation by counsel for the intervenors.

The summonses as issued by Special Agent Myers seek from each of the banks records relating to the intervenors, Josephine DeLuca and Barber DeLuca, individually or jointly, as such person or persons might have had in dealing with the respective banks, as such records included, inter alia, money transactions, whether of deposit or business, charge accounts, safe deposit applications, certificates of deposit or savings, and of other negotiations relating to money transactions during the years 1972 and 1977.

Neither Dollar Savings Bank nor Pittsburgh National Bank appeared or was represented at the hearing. The intervenors, Josephine DeLuca and Barber DeLuca, however, filed an answer in which they made denials and sought protection and privileges under the Fifth Amendment of the United States Constitution, and objected generally to the enforcement of the summonses by this court for various reasons, and as well were represented at the hearing by counsel.

The Government, through Assistant United States Attorney, Thomas A. Daley, presented evidence through Special Agent Myers to the effect that as the Special Agent of the IRS he was assigned the task of procuring records of Josephine DeLuca and Barber DeLuca for the purpose of ascertaining the correctness and auditing the returns as made in certain past years; that he attempted to establish contact with the DeLucas but was refused any contacts; that had he been granted such contact, he would have attempted to procure the information which he needed in order to make the proper inquiry and report as required by law; that originally there had been action by the police of the City of Pittsburgh in which a bank book of Pittsburgh National Bank was found and the City Police reported this to the IRS; that the IRS had other records and information but that relevant evidence for a complete understanding of the financial affairs and possible obligation of the DeLucas was not in its possession, and that it was necessary that it have such additional information to determine whether there was either civil, criminal, or perhaps both liability or not liability against the DeLucas, and even for a possible refund if such should be revealed; that while reports from the banks relating to interest and dividend bearing accounts and securities were filed with the IRS, other business records exist which it does not have and can only procure through the aid of the records

of both defendant banks; that unless such evidence is procured, Special Agent Myers cannot perform his obligatory task as assigned to him; that he performed all the proper administrative steps necessary and proceeded in accordance with law by complaining to the court for the enforcement of the summonses; that the investigation is in its initial stages; and that Special Agent Myers has not made any recommendation for criminal prosecution in this case and to his knowledge no one else within the IRS has made any such recommendation.

Special Agent Myers filed an affidavit with the complaint, but this affidavit was not countered by an affidavit of the DeLucas, and no evidence other than cross-examination of Myers was presented by counsel for the DeLucas.

Under these circumstances, from the evidence presented at the hearing and from the record as a whole, I find the following facts:

1.  The plaintiff, Timothy H. Myers, is a special agent of the Internal Revenue Service, employed in the Criminal Investigation Division of the Office of the District Director, and is conducting an investigation for the purpose of reviewing the tax liability of Josephine DeLuca for the years 1975 through 1977;

2.  Pursuant to the authority contained in § 7602 of Title 26 U.S.C.[1] and relevant Treasury Regulations, 26 C.F.R. § 301.-7602–1, Agent Myers issued IRS summonses to the respondent banks requiring the production of records pertaining to accounts and transactions at the banks by the taxpayer, Josephine DeLuca and her husband, Barber DeLuca, for the purpose of providing necessary information for the investigation;

3.  Josephine DeLuca and Barber DeLuca have intervened to prevent compliance by the banks with the summonses;

4.  The information sought from the banks regarding the accounts and transactions of Josephine DeLuca and Barber DeLuca is not within the possession of the IRS, with the possible exception of certain interest income reported on 1099 forms filed by the banks, and the joint tax returns of Josephine DeLuca and Barber DeLuca;

5.  The investigation to determine the existence of any civil or criminal liability, or lack thereof, of the taxpayer is in its preliminary stage;

6.  Special Agent Myers has not made, nor has anyone else in the Internal Revenue Service made, any recommendation for prosecution of this case to the Justice Department; and

7.  All of the proper administrative steps, including those outlined in 26 U.S.C. § 7609 (see Appendix) for the issuance of these summonses have been followed.

The law is well settled in cases such as these now before me and requires certain compliance by the government in order to procure the records necessary for ascertaining the liabilities or credits which may be due the taxpayer. It also sets forth the method and procedure which must be followed and essential elements involved thereby.

In *United States v. LaSalle National Bank*, 437 U.S. 298, 98 S.Ct. 2357, 57 L.Ed.2d 221 (1978), the Supreme Court outlined the requirements to enforce a summons under § 7602. Since the civil and criminal elements of the tax enforcement system are inherently intertwined regarding the investigation of civil and criminal liability, the Supreme Court established the cutoff rule that after a particular investigation has been referred to the Justice Department for criminal prosecution, the Service may not issue a § 7602 summons for taxpayer-related records pertaining to that matter. This cutoff point for the enforcement of IRS summonses is necessary for prevention of these summonses being used as an adjunct to the Justice Department's sources of criminal discovery. See *United*

---

1.  The statutory text of 26 U.S.C. §§ 7602, 7604, 7609(a) (b), IRC §§ 7602, 7604, 7609(a) (b) appears as an appendix to this Opinion.

*States v. LaSalle, supra,* at pages 308–313, 98 S.Ct. at pages 2363–66; *United States v. Garden State National Bank,* 607 F.2d 61, 68 (C.A.3, 1979). In the instant case, the uncontroverted evidence indicates that neither the investigating agent, nor anyone else in the Internal Revenue Service, has ever made any recommendation for prosecution against anyone and that the investigation is still in an early stage.

■■■ The Court in *LaSalle, supra,* further stated that the enforcement of a summons is conditioned upon the good-faith use of the summons authority by the IRS. The government, through the affidavit and testimony of Agent Myers, successfully established the four prongs of the prima facie showing of "good faith" as required by *LaSalle,* and as outlined in *United States v. Powell,* 379 U.S. 48, 57–58, 85 S.Ct. 248, 255, 13 L.Ed.2d 112 (1964), namely:

(1) that the investigation is being conducted pursuant to a legitimate (some civil tax collection) purpose;

(2) that the inquiry or material sought is relevant to the legitimate purpose of the investigation;

(3) that the information sought is not already in the possession of the IRS; and

(4) that the proper administrative steps have been followed.

Those resisting enforcement of a § 7602 summons must disprove the actual existence of a valid civil tax determination or collection purpose by the IRS. *LaSalle, supra,* 437 U.S. at pages 313–317, 98 S.Ct. at pages 2366–68. The intervenors here have failed to meet in any way the heavy burden of disproving the actual existence of a valid civil tax determination, calculation or collection purpose.

Our Circuit has further elucidated the *LaSalle* considerations in recent decisions: *United States v. McCarthy,* 514 F.2d 368 (C.A.3, 1975); *United States v. Genser (Genser II),* 595 F.2d 146 (C.A.3, 1979); *United States v. Genser (Genser III),* 602 F.2d 69 (C.A.3, 1979); *United States v. Serubo,* 604 F.2d 807 (C.A.3, 1979); *United States v. Garden State National Bank, supra.*

In *United States v. Garden State Bank, supra,* the Court stated that where, as in the instant case, the IRS has not recommended criminal prosecution to the Justice Department and the investigating agent has not recommended prosecution to higher authorities within the Service, "the taxpayer bears an almost impossible burden to resist enforcement of the summons." 607 F.2d at 67.

The Court further summarized the relevant considerations as follows:

". . . three discrete time periods have been delineated. Once the Service has recommended prosecution to the Justice Department, *LaSalle conclusively* precludes further issuance of I.R.S. summonses. Prior in time to such a recommendation, summonses are presumptively valid at two levels. At the first level, if the investigating agent has already recommended prosecution to his superiors (but they have not recommended prosecution to the Justice Department even though a commitment to recommend may have been made, *see Genser III,* at 71). *LaSalle* imposes a 'heavy' burden on the taxpayer to prove 'bad faith.' At the second level, where the investigating agent has not even recommended prosecution to his superiors, *Genser II* and *Serubo* severely limit the ability of the taxpayer to challenge enforcement, characterizing the summonses as 'virtually unassailable,' *Genser II,* 595 F.2d at 151. In this latter context, *Genser II* described two situations where a taxpayer might satisfy even this insurmountable burden. The first example was one where the summonses were issued at the request of a United States Attorney. The second example was one where the agent had already decided to recommend prosecution but had delayed doing so formally at the behest of his superiors for the sole purpose of allowing issuance of summonses in furtherance of a criminal investigation."

.    .    .    .    .

"In short, *LaSalle* may not have closed the door in the taxpayer's face, but neither did it leave much more than a very slight opening." 607 F.2d at 69–70.

No proof was offered nor does the record contain any evidence whatsoever that either of the foregoing exceptional situations occurred.

The designation of Agent Myers as a "Special Agent" and therefore part of the Criminal Investigation Division, is not significant. Special agents conduct investigations of both civil and criminal liability with or without the assistance of revenue agents. See *United States v. LaSalle National Bank, supra*, 437 U.S. at pages 308–311, 98 S.Ct. at pages 2363–65, and *Donaldson v. United States*, 400 U.S. 517, 535–536, 91 S.Ct. 534, 544–45, 27 L.Ed.2d 580 (1971).

■ Josephine DeLuca alleged in her answer (but did not further articulate this point by brief or argument) that production by the bank of the requested documents would somehow violate her rights under the Fifth Amendment. These records, being business records in the possession of the banks, and not the private papers of the taxpayer, are not privileged and there is no bar to their production under either the Fourth or Fifth Amendments. *Couch v. United States*, 409 U.S. 322, 93 S.Ct. 611, 34 L.Ed.2d 548 (1973).

In summary, the record as a whole indicates that the IRS is honestly pursuing the goals of § 7602 by using these summonses; and that the taxpayer has failed to sustain in any way her heavy burden of proving "bad faith" on the part of the IRS. Accordingly, these summonses are enforceable.

## ORDER OF COURT

AND NOW, TO–WIT, this 15th day of April 1980, in accordance with the foregoing Opinion, after hearing upon the Order To Show Cause why the defendants should not be compelled to obey the Internal Revenue Service summonses served upon the defendant banks, Dollar Savings Bank and Pittsburgh National Bank,

IT IS HEREBY ORDERED AND DIRECTED that the defendant banks, Dollar Savings Bank and Pittsburgh National Bank, obey the aforementioned summonses with the attendance, testimony and production of books, papers, records or other data as required and called for by the terms of the summonses.

## APPENDIX

26 U.S.C. § 7602 I.R.C. § 7602, states:

For the purpose of ascertaining the correctness of any return, making a return where none has been made, determining the liability of any person for any internal revenue tax or the liability at law or in equity of any transferee or fiduciary of any person in respect of any internal revenue tax, or collecting any such liability, the Secretary or his delegate is authorized—

(1) To examine any books, papers, records, or other data which may be relevant or material to such inquiry;

(2) To summon the person liable for tax or required to perform the act, or any officer or employee of such person, or any person having possession, custody, or care of books of account containing entries relating to the business of the person liable for tax or required to perform the act, or any other person the Secretary or his delegate may deem proper, to appear before the Secretary or his delegate at a time and place named in the summons and to produce such books, papers, records, or other data, and to give such testimony, under oath, as may be relevant or material to such inquiry; and

(3) To take such testimony of the person concerned, under oath, as may be relevant or material to such inquiry.

26 U.S.C. § 7604, I.R.C. § 7604, states:

(a) Jurisdiction of district court.—If any person is summoned under the internal revenue laws to appear, or testify, or to produce books, papers, records, or other data, the United States district court for the district in which such person resides or is found shall have jurisdiction by ap-

propriate process to compel such attendance, testimony, or production of books, papers, records, or other data.

(b) Enforcement.—Whenever any person summoned under section 6420(e)(2), 6421(f)(2), 6424(d)(2), 6427(g)(2), of 7602 neglects or refuses to obey such summons, or to produce books, papers, records, or other data, or to give testimony, as required, the Secretary may apply to the judge of the district court or to a United States commissioner for the district within which the person so summoned resides or is found for an attachment against him as for a contempt. It shall be the duty of the judge or commissioner to hear the application, and, if satisfactory proof is made, to issue an attachment, directed to some proper officer, for the arrest of such person, and upon his being brought before him to proceed to a hearing of the case; and upon such hearing the judge or the United States commissioner shall have power to make such order as he shall deem proper, not inconsistent with the law for the punishment of contempts, to enforce obedience to the requirements of the summons and to punish such person for his default or disobedience.

26 U.S.C. § 7609(a)–(b), I.R.C. § 7609(a)–(b), states:

(a) Notice,—

(1) In general,—If—

(A) any summons described in subsection (c) is served on any person who is a third-party recordkeeper, and

(B) the summons requires the production of any portion of records made or kept of the business transactions or affairs of any person (other than the person summoned) who is identified in the description of the records contained in the summons, then notice of the summons shall be given to any person so identified within 3 days of the day on which such service is made, but no later than the 14th day before the day fixed in the summons as the day upon which such records are to be examined. Such notice shall be accompanied by a copy of the summons which has been served and shall contain directions for staying compliance with the summons under subsection (b)(2).

(2) Sufficiency of notice.—Such notice shall be sufficient if, on or before such third day, such notice is served in the manner provided in section 7603 (relating to service of summons) upon the person entitled to notice, or is mailed by certified or registered mail to the last known address of such person, or, in the absence of a last known address, is left with the person summoned. If such notice is mailed, it shall be sufficient if mailed to the last known address of the person entitled to notice, or in the case of notice to the Secretary under section 6903 of the existence of a fiduciary relationship, to the last known address of the fiduciary of such person, even if such person or fiduciary is then deceased, under a legal disability, or no longer in existence.

(3) Third-party recordkeeper defined.— For purposes of this subsection the term "third-party recordkeeper" means—

(A) any mutual savings bank, cooperative bank, domestic building and loan association, or other savings institution chartered and supervised as a savings and loan or similar association under Federal or State law, any bank (as defined in section 581), or any credit union (within the meaning of section 501(c)(14)(A):

(B) any consumer reporting agency (as defined under section 603(d) of the Fair Credit Reporting Act (15 U.S.C. 1681a(f));

(C) any person extending credit through the use of credit cards or similar devices;

(D) any broker (as defined in section 3(a)(4) of the Securities Exchange Act of 1934 (15 U.S.C. 78(c)(a)(4)));

(E) any attorney; and

(F) any accountant.

(4) Exceptions.—Paragraph (1) shall not apply to any summons—

(A) served on the person with respect to whose liability the summons is issued, or any officer or employee of such person,

(B) to determine whether or not records of the business transactions or affairs of

an identified person have been made or kept, or

(C) described in subsection (f).

(5) Nature of summons.—Any summons to which this subsection applies (and any summons in aid of collection described in subsection (c)(2)(B) shall identify the taxpayer to whom the summons relates or the other person to whom the records pertain and shall provide such other information as will enable the person summoned to locate the records required under the summons.

(b) Right to intervene; right to stay compliance.—

(1) Intervention.—Notwithstanding any other law or rule of law, any person who is entitled to notice of a summons under subsection (a) shall have the right to intervene in any proceeding with respect to the enforcement of such summons under section 7604.

(2) Right to stay compliance.—Notwithstanding any other law, any person who is entitled to notice of a summons under subsection (a) shall have the right to stay compliance with the summons if, not later than the 14th day after the day such notice is given in the manner provided in subsection (a)(2)—

(A) notice in writing is given to the person summoned not to comply with the summons, and

(B) a copy of such notice not to comply with the summons is mailed by registered or certified mail to such person and to such office as the Secretary may direct in the notice referred to in subsection (a)(1).