Konstantinos **MOUTEVELIS**, Petitioner,

v.

**UNITED STATES of America,**
**Respondent.**

Civ. No. 83–0400.

United States District Court,
M.D. Pennsylvania.

April 21, 1983.

*The Rumsey Hall School, Inc.,* No. H–82–155 slip op. at 2 (D.Conn. Mar. 28, 1983).

Keith A. Clark, John B. Lampi, Harrisburg, Pa., for petitioner.

Sally A. Lied, Asst. U.S. Atty., Harrisburg, Pa., Michael J. Salem, Trial Atty., Tax Div., U.S. Dept. of Justice, Washington, D.C., for respondent.

## OPINION

MUIR, District Judge.

On January 25, 1982, the Internal Revenue Service served a summons upon Mid-State Bank & Trust Company (Mid-State Bank), Bellwood, Pennsylvania, directing Mid-State Bank to produce certain bank records relating to the Petitioner, *sub judice,* Konstantinos Moutevelis. Moutevelis was served with a copy of the summons on January 27, 1982. On February 11, 1983, Moutevelis instituted this action to quash the Internal Revenue Service summons directed to Mid-State Bank. This proceeding to quash an Internal Revenue Service summons is brought pursuant to 26 U.S.C. § 7609(b)(2) (1982). Jurisdiction over the matter is conferred on this Court by 26 U.S.C. § 7609(h)(1) (1982). Moutevelis's petition was originally docketed to Misc. No. 83–054 and after the matter became a contested proceeding, the Clerk of Court changed the number to Civil No. 83–0400, all in accordance with current directives of the Administrative Office.

Initially, the Court wishes to point out the absurdity of assigning one number to a petition to quash an IRS summons and then changing the number when the IRS contests the proceeding. Unless I miss my guess, there will rarely, if ever, be a petition to quash an IRS summons which will not be contested. This silly practice mandated by the Administrative Office causes unnecessary work and is productive of error.

On February 14, 1983, the Court issued a practice order. On February 15, 1983, the Court set a briefing schedule on the petition. Pursuant to the Court's briefing schedule, on February 25, 1983, Moutevelis

filed a memorandum in support of his petition to quash the summons. On March 14, 1983, the Internal Revenue Service filed a motion and brief opposing the petition to quash and seeking summary enforcement of the summons. On March 23, 1983, Moutevelis filed an answer and reply to the memorandum of law of the Internal Revenue Service. This motion to quash is now ripe for disposition by the undersigned.

Special Agent William J. Yankovich of the Criminal Investigation Division of the Internal Revenue Service was assigned to investigate the federal tax liabilities of Moutevelis d/b/a S & M Exxon and Happy Valley Motors for the years 1978 through 1981. *See* Yankovich affidavit at ¶ 2. The purpose of Yankovich's investigation is to evaluate Moutevelis's tax liabilities for the years in question and to determine whether or not Moutevelis has violated any of the criminal provisions of the Internal Revenue Code of 1954. Yankovich affidavit at ¶ 3. During Yankovich's investigation, he learned that Moutevelis transacted business with Mid-State Bank and concluded that Mid-State Bank might be in possession of testimony, books, records, papers, and other data relating to Moutevelis's financial transactions for the years in question. Yankovich affidavit at ¶ 5. Consequently, Yankovich issued the subject Internal Revenue Service summons to Mid-State Bank. Yankovich affidavit at ¶ 6.

Moutevelis seeks to have the subject summons quashed because (1) the summons has been issued allegedly in bad faith and solely in furtherance of a criminal investigation; and (2) Moutevelis has never been contacted by or undergone an audit by the Internal Revenue Service to ascertain Moutevelis's civil liability for tax deficiencies. Petition to Quash at ¶ 5. The United States contends that the petition to quash should be dismissed or in the alternative the summons should summarily be enforced and argues that: (1) the summons has been issued in furtherance of a legitimate Internal Revenue Service investigation; (2) the materials sought by the summons are relevant to the investigation; (3) the materials sought by the summons are not already within the

possession of the Internal Revenue Service; (4) the administrative prerequisites to issuance of the summons have been followed; and (5) no recommendation has been made by the Internal Revenue Service to the Department of Justice regarding criminal prosecution of Moutevelis for violation of the Internal Revenue Code of 1954.

The standards for enforcement of an Internal Revenue Service Summons are well established. There is an absolute ban on enforcement of Internal Revenue Service summonses issued after a case has been referred to the Justice Department for criminal prosecution of an alleged violation of the Internal Revenue Code of 1954. *United States v. LaSalle National Bank,* 437 U.S. 298, 98 S.Ct. 2357, 57 L.Ed.2d 221 (1977); *United States v. Garden State National Bank,* 607 F.2d 61, 67 (3d Cir.1979). Where, however, a matter has not yet been referred to the Justice Department for criminal prosecution, an Internal Revenue Service summons may be quashed only where the summons has not been issued in "good faith." *LaSalle National Bank,* 437 U.S. at 313–18, 98 S.Ct. at 2365–68; *Garden State National Bank,* 607 F.2d at 67. A prima facie showing of "good faith" for the purpose of enforcement of an Internal Revenue Service summons is established where: (1) the Internal Revenue Service investigation is being conducted for a legitimate purpose of civil tax collection; (2) the materials sought by the summons are relevant to the legitimate purpose of the investigation; (3) the information sought is not yet in the possession of the Internal Revenue Service; and (4) the proper administrative steps have been followed. *United States v. Powell,* 379 U.S. 48, 57–58, 85 S.Ct. 248, 254–255, 13 L.Ed.2d 112 (1964); *Garden State National Bank,* 607 F.2d at 67–68. "[Bad] faith" conduct by the Internal Revenue Service in this context "occurs when the Service ... abandons in an institutional sense ... the pursuit of civil tax determination or collection." *Garden State National Bank,* 607 F.2d at 68, *citing United States v. Serubo,* 604 F.2d 807, 811 (3d Cir.1979).

Prior to the passage of the Tax Equity and Fiscal Responsibility Act of 1982 (TEFRA), P.L. 97–248, 96 Stat. 601 et seq., when the Internal Revenue Service summoned records of a taxpayer from a "third-party recordkeeper" such as a bank, the affected taxpayer could automatically stay the third-party recordkeeper's compliance with the summons simply by giving notice in writing to the third-party recordkeeper not to comply with the summons. 26 U.S.C. § 7609(a)(3); (b)(1); (b)(2) (1976). Once such a notice in writing not to comply with the summons was given by the taxpayer to the third-party recordkeeper, no examination of the summoned records could take place absent a court order. 26 U.S.C. § 7609(d)(2) (1976). Thus, under pre-TEFRA law, the United States was compelled to institute an action seeking summary enforcement of an Internal Revenue Service summons in this context whenever the taxpayer merely notified a third-party recordkeeper not to comply with the summons.

■ Under the TEFRA, the burden is shifted to the taxpayer to institute an action to quash an Internal Revenue Service summons directed to a third-party recordkeeper. *See* 26 U.S.C. § 7609(b)(2) (1982). The announced reason for this change in procedure is set forth in the legislative history of the TEFRA as follows:

The [pre–1982] law rules relating to summonses of third-party recordkeepers were enacted in 1976 to protect the rights of persons whose records are held by third parties. The automatic stay provisions enacted in 1976 have been so easy to use that taxpayers have frequently delayed enforcement of summonses without considering the merit of any objection they might have. As a result, the Internal Revenue Service prevails in the vast majority of actions it brings to enforce third-party summonses. Indeed, most taxpayers fail to contest the summonses when the Internal Revenue Service seeks enforcement.

The [Senate] committee believes that shifting the burden of commencing litigation with respect to the validity of a third-party recordkeeper summons will eliminate most of the frivolous delay permitted under present law without adversely affecting the rights of taxpayers. S.Rep. No. 97–494 (Vol. 1) at 282, *reprinted at* 1982 U.S.C.A.A.N. ——.

Despite the shifting of the burden of instituting proceedings from the United States to the taxpayer, the relevant substantive law of summons enforcement is largely unchanged. *See* S.Rep. No. 97–494 at 283, *reprinted at* 1982 U.S.C.A.A.N. —— ("Although an action to quash the summons must be instituted by the taxpayer, the ultimate burden of persuasion with respect to its right to enforcement of the summons will remain on the Secretary [of the Treasury] as under current law.").

In determining whether or not an Internal Revenue Service summons was issued "in good faith", *LaSalle National Bank*, 437 U.S. at 318, 98 S.Ct. at 2368, the Court must determine that the investigation is conducted pursuant to a legitimate purpose, that the inquiry is relevant to that purpose, that the information sought is not already within the possession of the Internal Revenue Service, and that the administrative steps required by the Internal Revenue Code have been followed.

■ An Internal Revenue Service summons is issued for a proper purpose where it is issued "in good faith pursuit of the Congressionally authorized purposes of § 7602." *LaSalle National Bank*, 437 U.S. at 318, 98 S.Ct. at 2368. Section 7602 includes the following as proper purposes: "ascertaining the correctness of any return, making a return where none has been made, determining the liability of any person for any Internal Revenue tax..., collecting any such liability," 26 U.S.C. § 7602(a), and "inquiring into any offense connected with the administration or enforcement of the Internal Revenue laws," 26 U.S.C. § 7602(b) (1982). Apparently in reliance upon pre-TEFRA law, Moutevelis has argued that the purpose of the Internal Revenue Service in issuing the summons was improper because the Internal Revenue Service was investigating possible criminal violations of

the Internal Revenue Code of 1954. However, in light of the amendment to Section 7602(b) under the TEFRA, this defense to the enforcement of an Internal Revenue Service summons may be rejected absent a referral to the Justice Department, 26 U.S.C. §§ 7602(b), (c). In this case, where there has been no Justice Department referral, 26 U.S.C. § 7602(c); Yankovich Affidavit at ¶ 4, and the stated purpose of the summons is "for the years under investigation, to determine the taxpayer's correct tax liabilities and to determine whether the taxpayer has violated any of the criminal provisions of the Internal Revenue Code of 1954," Yankovich affidavit at ¶ 3, a proper Section 7602 purpose is stated.

■ The second requirement of *Powell* is that the summons seeks data which *may be* relevant to the investigation being undertaken. *Powell*, 379 U.S. at 57, 85 S.Ct. at 254. Critical to this requirement is the notion that the inquiry "*may be* relevant"; absolute certainty of relevance is not the test. *United States v. Bisceglia*, 420 U.S. 141, 145, 95 S.Ct. 915, 918, 43 L.Ed.2d 88 (1975) (emphasis added). The materials sought in the subject summons pertain to Moutevelis's banking relations with Mid-State Bank during the years in question. With one exception, given the nature of the records sought, the Court is convinced that the United States has more than an "idle" hope that relevant information will be revealed from the requested materials. That exception relates to the requested "testimony" in the possession of the bank. The undersigned does not think there is any likelihood that the bank will have a record of testimony relating to the movant. In essence, the expectation of the United States is sufficiently "realistic" except as to "testimony" in possession of the bank to protect Moutevelis from a "fishing expedition" and, thereby, satisfy the relevancy requirement of the *Powell* test. *E.g. United States v. Egenberg*, 443 F.2d 512, 515–16 (3d Cir.1971).

The United States must also demonstrate that the information sought in the subject summons is not already in the possession of the Internal Revenue Service. *Powell*, 379 U.S. at 57–58, 85 S.Ct. at 254–255. In this case, the Yankovich affidavit states that the Internal Revenue Service is not in possession of the information being sought. *See* Yankovich affidavit at ¶ 10. Moutevelis does not contest this point.

Finally, the United States must establish that the procedures under the Internal Revenue Code have been satisfied in the issuance of this subpoena. Again, this matter is not in dispute and the Yankovich affidavit avers such compliance. *See* Yankovich affidavit at ¶ 11. *E.g. United States v. Kis*, 658 F.2d 526, 536 (7th Cir.1981), *cert. denied, sub nom., Salkin v. United States*, 455 U.S. 1018, 102 S.Ct. 1712, 72 L.Ed.2d 135 (1982) ("[no] more than [an affidavit] is necessary to make the *prima facie* case" of the Internal Revenue Service.) *See also United States v. Garden State National Bank*, 607 F.2d 61, 68 (3d Cir.1979).

■ In a last-ditch effort to avoid enforcement of the Internal Revenue Service summons, Moutevelis asserts that he is entitled both to discovery and to a hearing in this matter. *See* Memorandum in Support of Petition at pp. 3–4; Reply Memorandum at pp. 3–6. In particular, Moutevelis relies on Section 331(c) of the TEFRA, 26 U.S.C. § 7609(h), which gives this Court the power "to hear and determine" a proceeding to quash an Internal Revenue Service summons. On this basis alone, Moutevelis asserts the existence of a right to a hearing. Section 7609(h) is merely a jurisdictional grant of authority for this Court to entertain a matter and does not dictate that the Court hold a hearing on every petition to quash a summons. Absent an explicit direction from the Court of Appeals of this Circuit or the Congress that a hearing is required, this Court will not interrupt its other important work and hold such a hearing. Furthermore, even if the statute suggested a right to a hearing, only where factual matters are actually in dispute would an evidentiary hearing be justified. *Cf.* F.R.Civ.P. 56 (summary judgment appropriate where no material factual issues are in dispute.) There are no factual mat-

ters in dispute in this case. The mere unsworn and unspecific assertions of Moutevelis which, even if true, would not give rise to a legally cognizable defense to the Internal Revenue Service summons are insufficient either to permit discovery or to require an evidentiary hearing. *Garden State National Bank,* 607 F.2d 61 (3d Cir.1979). *See United States v. Freedom Church,* 613 F.2d 316 (1st Cir.1979).

For all of the foregoing reasons, the Court will grant in part and deny in part the petition of Moutevelis to quash the Internal Revenue Service summons. The Court will quash that portion of the summons relating to "testimony" in the possession of the bank and will otherwise direct the summary enforcement of the summons.

An appropriate order will be entered.