Charles **RIGGS** and Rosemary Riggs, Petitioners,

v.

**UNITED STATES** of America and Raymond J. Tabor, Respondents.

No. 83 C 6314.

United States District Court, N.D. Illinois, E.D.

Dec. 19, 1983.

Charles and Rosemary Riggs, pro se.

Dan K. Webb, U.S. Atty., Linda A. Wauzenski, Asst. U.S. Atty., Chicago, Ill., Robert G. Nath, U.S. Dept. of Justice, Tax Division, Washington, D.C., for respondents.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Charles and Rosemary Riggs (collectively "Riggs") bring this pro se action to quash three Internal Revenue Service ("IRS") summonses issued August 18 and 19, 1983 [1] to third parties allegedly in possession of Riggs' records. In response the United States has moved for dismissal under Fed.R.Civ.P. ("Rule") 12(b)(1), contending Riggs' untimely filing deprives this Court of subject matter jurisdiction. For the reasons stated in this memorandum opinion and order, the motion is granted.

### Facts

In the course of an IRS investigation of Riggs' 1976–82 income tax liabilities and returns, agent Raymond J. Tabor ("Tabor") served IRS "third-party recordkeeper" summonses on TRW Credit Data, Inc. and Trans Union Credit Information Co. (both on August 18) and Harry B. Madsen (on August 19). Copies of all three summonses were sent to Riggs by certified mail August 19 and received by Riggs August 23.

On September 8 Riggs appeared at this District Court Clerk's Office to file his petition. As with all civil actions, he was required to affix a civil cover sheet (the JS–44A form approved by the Judicial Conference of the United States), which he was given by a deputy clerk. Riggs asked for but was not given help in filling out the cover sheet. Instead of filing his action that day, he came back to file it next day, September 9—a critical one-day difference, as we shall see.

---

1. Because all events took place in 1983, the rest of this opinion will omit the year designation.

740

*Third-Party Recordkeeper Summonses*

Under 26 U.S.C. § 7602(a)[2] the IRS can call on any person in possession of a taxpayer's records to produce those records in aid of a tax investigation. When a summons for that purpose is issued to a "third-party recordkeeper" (defined in Section 7609(a)(3)), the taxpayer must be given notice (1) within 3 days after the summons is served on the third party and (2) at least 23 days before the day specified in the summons for examination of the records (Section 7609(a)(1)). Section 7609(a)(2) specifies the manner of giving notice to the taxpayer:

Such notice shall be sufficient if, on or before such third day, such notice is served in the manner provided in section 7603 (relating to service of summons)[3] upon the person entitled to notice, or is mailed by certified or registered mail to the last known address of such person, or, in the absence of a last known address, is left with the person summoned. If such notice is mailed, it shall be sufficient if mailed to the last known address of the person entitled to notice or, in the case of notice to the Secretary under section 6903 of the existence of a fiduciary relationship, to the last known address of the fiduciary of such person, even if such person or fiduciary is then deceased, under a legal disability, or no longer in existence.

In turn Section 7609(b)(2)(A) authorizes the taxpayer to sue to quash the summons:

Notwithstanding any other law or rule of law, any person who is entitled to notice of a summons under subsection (a) shall have the right to begin a proceeding to quash such summons not later than the 20th day after the day such notice is given in the manner provided in subsection [7609](a)(2). In any such proceeding, the Secretary may seek to compel compliance with the summons.

This new procedure[4] was intended to shift the procedural burden to the taxpayer in third-party summons situations (under former law the taxpayer had the right to prevent the recordkeeper's compliance with a summons by a simple letter, thus forcing the IRS to institute summons enforcement proceedings against the resisting recordkeeper[5]). Congress' stated purpose for the procedural shift was to eliminate delay in summons compliance, without adversely affecting the taxpayer's rights. S.Rep. No. 494, 97th Cong., 2d Sess. 282, *reprinted in* 1982 U.S.Code Cong. & Ad.News 781, 1028. No change in the substantive law of summons enforcement was intended. *Godwin v. United States,* 564 F.Supp. 1209, 1211–12 (D.Del.1983); *Moutevelis v. United States,* 561 F.Supp. 1211, 1214 (M.D.Pa. 1983).

*Motion To Dismiss*

Two questions are posed by the United States' motion to dismiss:

1. Does the Section 7609(b)(2)(A) 20-day period start to run when the notice is mailed or when the taxpayer receives it?

2. In any event, can the period be extended for equitable reasons?

Both questions must be answered adversely to Riggs' position here.

■ As for the first issue, it is too early in TEFRA's life for the matter to have received Court of Appeals scrutiny. But the United States cites a number of District Court decisions that have started the time

---

**2.** All further Internal Revenue Code (Title 26) references in this opinion will take the form "Section—."

**3.** Section 7603, not implicated here, reads in relevant part:

A summons issued under section … 7602 shall be served by the Secretary, by an attested copy delivered in hand to the person to whom it is directed, or left at his last and usual place of abode. …

**4.** It was enacted as part of the Tax Equity and Fiscal Responsibility Act of 1982 ("TEFRA"), Pub.L. 97–248, 96 Stat. 324, 620 (1982) and applies to all summonses issued after December 31, 1982.

**5.** That was the Section 7609 structure under the Tax Reform Act of 1976.

clock running when the notice is mailed,[6] and this Court has seen only one case applying (and without analysis at that) the later date on which the notice is received.[7] What controls, of course, is that the plain language of the statute compels the former result:

1. Section 7609(b)(2) requires the taxpayer to begin the proceedings to quash "not later than the 20th day after such notice is given in the manner provided in subsection [7609](a)(2)."

2. In turn Section 7609(a)(2) specifies the notice "shall be sufficient" if:

(a) "mailed by certified or registered mail to the last known address of such person [entitled to notice]" or

(b) where a fiduciary relationship is known to the IRS, "mailed ... to the last known address of the fiduciary of such person [entitled to notice], even if such person or fiduciary is then deceased, under a legal disability, or no longer in existence."

Were actual *delivery* of the notice required, the statutory provisions as to "sufficien[cy]" and "last known address" would be both unnecessary and meaningless.[8]

This ruling is all of a piece with the strict construction given to other statutes that waive the sovereign immunity of the United States. Such a literal (or strict, if you will) reading extends to the statutory time limitations for commencing actions against the United States—even if the taxpayer does not in fact receive the notice whose mailing triggers the onset of the limitation period. In the tax area *see, e.g., Church of the Creator, Inc. v. Commissioner,* 707

F.2d 491 (11th Cir.1983) (per curiam); *Wilson v. Commissioner,* 564 F.2d 1317 (9th Cir.1977) (per curiam), *cert. denied sub nom. Mercer v. Commissioner,* 439 U.S. 832, 99 S.Ct. 110, 58 L.Ed.2d 127 (1978); in other areas of the law *see, e.g., Carr v. Veterans Administration,* 522 F.2d 1355, 1357 (5th Cir.1975); *Kollios v. United States,* 512 F.2d 1316 (1st Cir.1975); *Whipp v. Weinberger,* 505 F.2d 800, 801 (6th Cir.1974).

It makes no difference that Congress has sometimes chosen different language to specify the date of mailing a notice as the operative date.[9] There is no magic in the manner of expressing that concept, so long as the meaning is clearly there—as it surely is in Section 7609.

 Because September 9 (Riggs' actual date of filing) is outside the 20-day limit, this Court must go on to the second question: Whether under the circumstances September 8 (the 20th day) may be deemed the date this proceeding was "begun." Again Riggs' position cannot survive analysis.

Fed.R.Civ.P. 3 says:

A civil action is commenced by filing a complaint with the court.

In the notice itself Riggs were given detailed directions as to the time and procedure for filing (see Ex. A), including in part the statement:

You must comply with the Federal Rules of Civil Procedure and local rules of the United States District Court.

Nothing in this District Court's standard requirement of a civil cover sheet is ex-

---

**6.** *Williams v. United States,* No. IP 83–754–C, (S.D.Ind. Aug. 30, 1983); *Richardson v. United States,* No. Civ. 83–624 PHX CAM, (D.Ariz. Sept. 15, 1983); *Olmschenk v. United States,* No. 3–83–303, (D.Minn. July 1, 1983); *Olmschenk v. United States,* No. 3–83–304, (D.Minn. June 14, 1983); *Bilodeau v. United States,* 577 F.Supp. 234 (D.N.H.1983).

**7.** *Grisham v. United States,* 578 F.Supp. 73 (S.D.N.Y.1983). Because the petition in *Grisham* was untimely filed even when measured from the time the notice was received, the

court there had no occasion to focus on the issue presented here.

**8.** What else can "sufficient" mean, if not "sufficient" to satisfy the concept "notice is *given*"? Similarly, if actual receipt were essential, what would be the difference whether the notice were sent to the "last known address" or not?

**9.** In the Internal Revenue Code, see Sections 6213(a), 6532(a)(1) and 7428(b)(3); in other areas of the law, see, e.g., 28 U.S.C. §§ 1498(b) and 2401(b) and 42 U.S.C. § 4053.

traordinarily burdensome or difficult,[10] and Riggs cannot place the responsibility for its preparation on the personnel in the Clerk's Office. Indeed Charles Riggs did not first appear in the Clerk's Office until the 16th day after the notices were actually received by Rosemary Riggs, and he cannot fault anyone else for his having chosen to come in at the last minute and his then finding one of the filing requirements had not been anticipated by him.

■ In short, Section 7609(b)(2) establishes a jurisdictional requirement, for it imposes a limit on suing the sovereign. And even if it were otherwise—even were equitable tolling applicable—Riggs have shown no grounds for equitable relief.[11] This action is dismissed for want of subject matter jurisdiction.

---

**10.** Riggs' Petition To Quash, their Memorandum of Law in Support, their Affidavit and their Certificate of Service—all filed September 9—clearly show Riggs are hardly unlettered or incapable of reading and following instructions. Though they have opted to act pro se, it may also be noted parenthetically that one of the challenged summonses was served on Harry Madsen, a lawyer with "information ... in his possession ... communicated to him during the time he was retained by petitioner Charles Riggs for the purpose of arranging his affairs with respect to taxation" (Riggs Answer Mem. 1).

**11.** Neither waiver nor estoppel is applicable, and no other equitable rubric comes to mind as evoked by Riggs' claim.