**Rusty J. HANNA, et al., Plaintiffs,**

v.

**UNITED STATES of America,
Defendant.**

**No. 85–C–1159.**

United States District Court,
D. Utah, C.D.

Oct. 16, 1986.

W. Andrew McCullough, McCullough, Jones, Jensen & Ivins, Orem, Utah, for plaintiffs.

Brent D. Ward, U.S. Atty., Lawrence J. Leigh, C. William Ryan, Asst. U.S. Attys., Salt Lake City, Utah, Glen R. Dawson, Trial Atty., Tax Div., U.S. Dept. of Justice, Washington, D.C., for defendant.

## RULING ON DEFENDANT'S MOTION TO DISMISS

SAM, District Judge.

This is an action commenced by taxpayer Rusty J. Hanna to quash Internal Revenue Service summonses served on himself and Mini Spas, Inc., and on certain other business entities.

### I

Special Agent Brent D. Conlin (Agent Conlin), of the Criminal Investigation Division of the Internal Revenue Service under the District Director of the Salt Lake City District, is investigating the tax liabilities of petitioner, Rusty J. Hanna (Hanna), for the taxable periods 1981, 1982, and 1983. As part of this investigation, Agent Conlin issued six Internal Revenue Service summonses directing the following persons and entities to testify and to produce certain records related to Hanna: Rusty J. Hanna and Mini Spas, Inc. (Mini Spas), H. Sher-

wood and Company (Sherwood), General Motors Acceptance Corporation (GMAC), Continental Bank and Trust (Continental), Valley National Financial Service Company (Valley National), and Westport Bank (Westport).

On September 23, 1985, Agent Conlin served summons on Rusty J. Hanna and Mini Spas by handing an attested copy of the summons to Hanna. Hanna received no notice of that summons because such notice is not required under 26 U.S.C. § 7602(a).[1] Also on September 23, 1985, Agent Conlin served Sherwood by handing Howard Sherwood an attested copy of the summons and sent notice of the summons by certified mail to Hanna's last known address, as required under 26 U.S.C. § 7609(a). On October 8, 1985, Agent Conlin had attested copies of summonses served on Lynre Pitkin at GMAC and Barbara Lund at Continental and sent notices of the summonses by certified mail to Hanna's last known address. On October 17, 1985, Agent Conlin had an attested copy of a summons served on Sheri Lance at Valley National, and on October 18, 1985, he sent notice of the summons by certified mail to Hanna's last known address. On October 21, 1985, Agent Conlin served a summons by handing an attested copy of the summons to an employee at Westport and sent notice of the summons by certified mail to Hanna's last known address. Hanna filed his Motion for Order to Quash Summonses on October 11, 1985 and his Amended Petition to Quash on October 30, 1985. The summoned parties failed to provide the requested material by the return date of each summons. To date, Agent Conlin has received and placed under seal information from Westport, GMAC, and Continental.

## II

*Jurisdiction, the Government's prima facie case and the taxpayer's burden.*

The court must first determine whether each summons is properly before it because jurisdictional failure of an individual summons will result in dismissal of Hanna's Motion to Quash as to that summons. If the court should find subject matter jurisdiction, it must then rule on whether the issuance of each summons meets Supreme Court requirements, and if so, whether Hanna raises defenses that would render court-ordered enforcement of the summons an abuse of process.

■ Under 26 U.S.C. §§ 7602, 7604(a), and 7609(b)(2)(A), the court has subject matter jurisdiction to compel compliance with an Internal Revenue Service summons issued. Section 7602 authorizes service of summons for purposes of inquiring into the offense charged,[2] section 7604(a) lays jurisdiction for the enforcement of a summons with the district court for the district in which the summoned party resides,[3] and

1. Section 7602(a), 26 U.S.C. states:

    *Authority to Summon, Etc.*—For the purpose of ascertaining the correctness of any return, making a return where none has been made, determining the liability of any person for any internal revenue tax or the liability at law or in equity of any transferee or fiduciary of any person in respect of any internal revenue tax, or collecting any such liability, the Secretary is authorized—

    (1) To examine any books, papers, records, or other data which may be relevant or material to such inquiry;

    (2) To summon the person liable for tax or required to perform the act, or any officer or employee of such person, or any person having possession, custody, or care of books of account containing entries relating to the business of the person liable for tax or required to perform the act, or any other person the Secretary may deem proper, to appear before the Secretary at a time and place named in the summons and to produce such books, papers, records, or other date, and to give such testimony, under oath, as may be relevant or material to such inquiry; and

    (3) To take such testimony of the person concerned, under oath, as may be relevant or material to such inquiry.

2. Section 7602(b) states:

    (b) *Purpose May Include Inquiry Into Offfense.*—The purposes for which the Secretary may take any action described in paragraph (1), (2), or (3) of subsection (a) include the purpose of inquiring into any offense connected with the administration or enforcement of the internal revenue laws.

3. Section 7604(a) provides:

    *Jurisdiction of district court.*—If any person is summoned under the internal revenue laws

section 7609(b)(2)(A) provides that all petitions to quash summonses must be dismissed if not filed within 20 days after proper notice is given.[4] The taxpayer's rights to receive notice of service of a summons and to file a petition to quash arise under section 7609(b) only when records are in the custody of a "third-party recordkeeper," as defined in section 7609(a)(3)(A), and the burden of proving that an entity is a third-party recordkeeper rests with the taxpayer bringing the action to quash. *Smith v. United States*, 84–1 U.S. Tax Cas. (CCH) para. 9504 (M.D.Pa. 1984); *Organtini v. United States*, 84–1 U.S. Tax Cas. (CCH) para. 9281 (N.D.Ill.E.D.1984).

In *United States v. Powell*, the United States Supreme Court set out the criteria for determining the enforceability of an IRS summons that is properly before the court. 379 U.S. 48, 57, 58, 85 S.Ct. 248, 254, 255, 13 L.Ed.2d 112 (1964). *Powell* held that to be enforceable the summons must: (1) be issued for a proper purpose; (2) seek information relevant to the purpose; (3) seek information not currently in the Government's possession; and (4) satisfy all the administrative steps regarding the service and issuance of the summons. Upon a showing of the above criteria, the United States establishes a *prima facie* case for enforcement of the summons. *Smith v. United States*, 592 F.Supp. 5753 (D.C.Conn.1984). "The burden [to show a *prima facie* case] is a slight one because the statute must be read broadly in order to ensure that the enforcement powers of the IRS are not unduly restricted." *United States v. Balanced Financial Management*, 769 F.2d 1440, 1443 (10th Cir.1985) (citing *United States v. Kis*, 658 F.2d 526, 536 (7th Cir.1981), *cert. denied*, 455 U.S. 1018, 102 S.Ct. 1712, 72 L.Ed.2d 135 (1982)). "The requisite showing is generally made by affidavit of the agent who issued the summons and who is seeking enforcement." *Balanced Financial Management*, 769 F.2d at 1443 (quoting *United States v. Garden State National Bank*, 607 F.2d 61, 68 (3rd Cir.1979)); *see also Kis*, 658 F.2d at 537.

In *Balanced Financial Management*, the Tenth Circuit analyzed the burden that shifts to the taxpayer upon the Government's showing of a *prima facie* case and concluded that a taxpayer's failure to meet that burden should result in dismissal, without an evidentiary hearing, of his Petition to Quash. The *Balanced Financial Management* Court agreed with *Kis* that "summons enforcement proceedings 'are intended to be summary in nature[,] ... [as] [t]he sole reason for the proceedings ... is to ensure that the IRS has issued the summons for proper investigatory purposes under section 7602 and not for some illegitimate purpose....'" *Balanced Financial Management*, 769 F.2d at 1449 (quoting *Kis*, 658 F.2d at 535). Therefore, the taxpayer's burden is a heavy one. *Id.* at 1449 (citing *Garden State National Bank*, 607 F.2d at 68).

The taxpayer must "establish any defenses or ... prove that enforcement would constitute an abuse of the court's process." *United States v. Genser*, 582 F.2d 292, 302 (3d Cir.1978) (*Genser I*). He must "prove a lack of good faith, that the government has abandoned in the institutional sense its pursuit of possible civil penalties." *United States v. Moll*, 602 F.2d 134, 138 (7th Cir.1979). The taxpayer must do more than just produce evidence that would call into question the

to appear, to testify, or to produce books, papers, records, or other data, the United States district court for the district in which such person resides or is found shall have jurisdiction by appropriate process to compel such attendance, testimony, or production of books, papers, records, or other data.

**4.** Section 7609(b)(2)(A) governs the filing of petitions to quash service of an IRS summon as follows:

*In general.*—Notwithstanding any other law or rule of law, any person who is entitled to notice of a summons under subsection (a) shall have the right to begin a proceeding to quash such summons not later than the 20th day after the day such notice is given in the manner provided in subsection (a)(2). In any such proceeding, the Secretary may seek to compel compliance with the summons.

Government's *prima facie* case. The burden of proof in these contested areas rests squarely on the taxpayer. As the Third Circuit observed, "[*U.S. v.*] *LaSalle* [*National Bank*, 437 U.S. 298, 98 S.Ct. 2357, 57 L.Ed.2d 221 (1978)] may not have closed the door in the taxpayer's face, but neither did it leave more than a very slight opening." *United States v. Garden State National Bank*, 607 F.2d 61, 70 (3d Cir.1979).

*Balanced Financial Management*, 769 F.2d at 1444 (quoting *Kis*, 658 F.2d at 538–39 (footnote omitted)).

*Balanced Financial Management* then discusses the taxpayer's affirmative defenses as follows:

'In responding to the Government's showing, it is clear that a taxpayer must factually oppose the Government's allegations by affidavit. Legal conclusions or mere memoranda of law will not suffice.' *Garden State National Bank*, 607 F.2d at 71. (citation omitted). 'Allegations supporting a "bad faith" defense are ... insufficient if conclusionary.' *Id.* '[I]f at this stage the taxpayer cannot refute the government's *prima facie Powell* showing or cannot factually support a proper affirmative defense, the district court should dispose of the proceeding on the papers before it and without an evidentiary hearing....' *Id.* It is only where material Government allegations 'are factually refuted by the taxpayer, thus presenting a disputed factual issue, or where proper affirmative defenses such as those alleging "bad faith" under the tests of *LaSalle* and *Genser II*, are factually supported by the taxpayer's affidavits, the taxpayer is entitled to an evidentiary hearing.' [*U.S. v.*] *McCarthy*, 514 F.2d [368] at 368 [3rd Cir.1975].

*Balanced Financial Management*, 769 F.2d at 1444, 1445 (quoting *Garden State National Bank*, 607 F.2d at 71 (footnote omitted).

*United States v. Genser*, 582 F.2d 292 (3rd Cir.1978), quotes with approval the following *LaSalle* explanation of the United States Supreme Court test for enforceability of IRS summonses as set out in *United States v. Donaldson*, 400 U.S. 517, 91 S.Ct. 534, 27 L.Ed.2d 580 (1971):

In summary, then, several requirements emerge for the enforcement of an internal revenue summons. First, the summons must be issued before the Service recommends to the Department of Justice that a criminal prosecution, which reasonably would relate to the subject matter of the summons, be undertaken. Second, the Service at all times must use the summons authority in good-faith pursuit of the congressionally authorized purposes of § 7602. This second prerequisite requires the Service to meet the *Powell* standards of good faith. It also requires that the Service not abandon in an institutional sense ... the pursuit of civil tax determination or collection.

*Genser*, 582 F.2d at 301 (quoting *United States v. LaSalle National Bank*, 437 U.S. 298, 98 S.Ct. 2357, 57 L.Ed.2d 221 (1978)).

With the addition of a new subsection (b) to section 7602, TEFRA clarified and altered the *LaSalle* requirements by providing that a summons may be issued to inquire into *any* offense connected with the administration and enforcement of the internal revenue laws, including issuance of a summons for a solely criminal purpose.[5] The sole exception to the section 7602(b) authorization arises when a "Justice Department referral" has been made, as set out in 26 U.S.C. § 7602(c)(2).[6] Therefore,

---

5. By its authorization of issuance of an IRS summons for a solely criminal purpose, Congress intended to eliminate the wasteful litigation that was created by *LaSalle*. Senate Report No. 97–494, 97th Cong., 2nd sess. 285 (1982), *reprinted in* 1982 U.S.Code Cong. & Admin. News 781, at 1031 (Vol. 7).

6. Section 7602(c)(2) defines a Justice Department referral as follows:

*Justice department referral in effect.*—For purposes of this subsection—

(A) *In general.*—A Justice Department referral is in effect with respect to any person if—

(i) the Secretary has recommended to the Attorney General a grand jury investigation of, or the criminal prosecution of, such per-

to make a proper affirmative defense, Hanna must set forth facts that show the court's enforcement of each summons would constitute an abuse of the court's process. Absent a factual showing the summonses were issued in bad faith or after referral to the Justice Department, the court will summarily deny Hanna's petition to quash.

## III

### *The enforceability of the individual summonses.*

Applying the controlling statutory and decisional authority, the court will now rule on the individual summonses.

### A. *Sherwood and Howard Sherman*

■ The government does not dispute Sherwood's status as a third-party record holder or the timeliness of Hanna's petition to quash the Sherwood summons. The sole remaining questions are whether the Government made its *Powell prima facie* showing and whether Hanna raised a proper affirmative defense to the showing.

*Powell* first requires that the summons be issued for a proper purpose. The Sherwood summons was issued in conjunction with the investigation of Hanna's federal income tax liability for the years 1981, 1982, and 1983, for the express purpose of inquiring whether Hanna committed any offense connected with the proper reporting of his income under the Internal Revenue laws. As discussed above, issuance of an IRS summons for that purpose is clearly

authorized under 26 U.S.C. §§ 7602(a) and 7602(b). No Justice Department referral for criminal prosecution has been made with respect to Hanna for these taxable years.

Notwithstanding his concession that Congress clearly intended to permit the IRS to inquire into activities that could give rise to criminal liability for a taxpayer, Hanna argues the summons was issued in abrogation of his Fifth Amendment right to avoid self-incrimination. The court rejects that argument because the section 7602(b) amendment (authorizing issuance of summons even if the evidence uncovered might later serve as a basis for criminal prosecution of a taxpayer) was enacted with the express purpose to replace the former statute that disallowed service of summons used solely to aid criminal investigations. The addition of subsection (b) indicates Congress balanced the state interest in tax collection against the individual taxpayer's right to avoid potential self-incrimination and determined that, at the outset of an investigation into tax liability, the state interest carried greater weight than the taxpayer's interest. Where the congressional intent is manifest, the court is not disposed to question Congress' reasons for allowing this investigative means to the legitimate state end of determining the liability of an individual taxpayer. Moreover, a substantial body of caselaw holds that investigation of criminal violations of the Internal Revenue Code is a valid purpose for issuance of a summons under the statutes empowering the IRS to summon third-party

son for any offense connected with the administration or enforcement of the internal revenue laws, or

(ii) any request is made under section 6103(h)(3)(B) for the disclosure of any return or return information (within the meaning of section 6103(b)) relating to such person.

(B) *Termination.*—A Justice Department referral shall cease to be in effect with respect to a person when—

(i) the Attorney General notifies the Secretary, in writing, that—

(I) he will not prosecute such person for any offense connected with the administration or enforcement of the internal revenue laws,

(II) he will not authorize a grand jury investigation of such person with respect to such an offense, or

(III) he will discontinue such a grand jury investigation,

(ii) a final disposition has been made of any criminal proceeding pertaining to the enforcement of the internal revenue laws which was instituted by the Attorney General against such person, or

(iii) the Attorney General notifies the Secretary, in writing, that he will not prosecute such person for any offense connected with the administration or enforcement of the internal revenue laws relating to the request described in subparagraph (A)(11).

recordkeepers for inquiry into a taxpayer's liability. *See e.g., Pickel v. United States,* 746 F.2d 176 (C.A.Pa.1984). Therefore, the court finds the summons was issued for a legitimate purpose and the issuance did not, as he contends, violate Hanna's constitutional rights.

After ruling the summons was issued for a proper purpose, the court must decide whether the information sought through the summons is relevant to that purpose. The government has broad investigatory powers to explore an individual's tax liability, and the required threshold showing of relevance is low. Indeed, issuance of an IRS summons is appropriate when it seeks production of records that "might throw light upon" a taxpayer's liabilities. *United States v. Noall,* 587 F.2d 123, 125 (2d Cir. 1978), *cert. denied,* 441 U.S. 923, 99 S.Ct. 2031, 60 L.Ed.2d 396 (1979). Hanna offers no evidence that the material sought by this summons would not aid in some way the investigation of his tax liabilities, and the court does not question the relevance of the material sought by the summons.

*Powell* further requires that the summons seek information not currently in the Government's possession. Hanna contends he cooperated fully with a 1983 civil audit of his and Mini Spa's financial records by producing numerous documents he claims must now be duplicated to comply with the instant summonses. He makes no specific claim that the information sought by the Sherwood summons is in the possession of the IRS.

On the question of whether papers previously examined during a civil audit are in possession of the IRS as contemplated in *Powell,* the Tenth Circuit states:

> First, the appellee claims that during Agent Robbins' investigation, the IRS had inspected every item sought under the summons, and therefore must be deemed already to be in possession of the requested information. We cannot agree. As courts in other circuits have noted, a tax fraud audit differs both quantitatively and qualitatively from a

routine audit, so that latter 'does not fulfill the needs of a special agent investigating fraud.' *United States v. Popkin,* 623 F.2d 108, 109 (9th Cir.1980). *See also United States v. Lenon,* 579 F.2d 420, 422 (7th Cir.1978). Therefore, the government cannot be deemed to be already in possession of the documents requested in the summons by virtue of Agent Robbins' initial inspection.

*United States v. Silvestain,* 668 F.2d 1161, 1163 (10th Cir.1982). *Smith v. United States* added that the IRS may seek confirmation from third-party recordkeepers of information it has received from the taxpayer. 592 F.Supp. 753, 756 (D.Conn.1984). Finally, by affidavit, Agent Conlin attested the IRS does not possess the information sought by the six summonses issued.[7] Absent evidence beyond Hanna's mere allegations to the contrary, the court concludes the information summoned from Sherwood is not currently in the possession of the IRS.

The fourth and final *Powell* requirement is that the summons should satisfy all the administrative steps regarding its service and issuance. Pursuant to 26 U.S.C. § 7609(a), the Sherwood summons was properly served on a third-party recordkeeper, and notice was mailed the same day by certified mail to Hanna's last known address. The court finds no defect in service and for reasons stated in its discussion of the GMAC summons, *infra,* rejects Hanna's argument that the Government acted in bad faith by mailing on different dates the six summonses involved in the present action in an effort "to harass [Hanna] and to make it difficult for [him] to defend himself, by 'fanning out' the Summonses to make it difficult to respond." Hanna's Reply Memorandum at 5. The assertion of bad faith is especially weak regarding the Sherwood summons because notice of it was mailed to Hanna's last known address on the date the first notice was sent, the same day notices of his personal and the Mini Spa summonses were mailed.

---

7. Material under seal is not considered to be in possession of the IRS.

The court determines the Government has made a *prima facie* showing for the enforcement of the Sherwood summons and finds neither a factual opposition by affidavit of the Government's allegations nor a proper affirmative defense to rebut that showing. Therefore, the court denies Hanna's Petition to Quash as to the Sherwood summons.

### B. *Rusty Hanna and Mini Spas*

■ The court agrees with the Government that Rusty J. Hanna and Mini Spas are not third-party recordkeepers, and therefore, the court lacks subject matter jurisdiction over the summons served to obtain their corporate records. Clearly, a closely held corporation controlled by the taxpayer is not among those entities qualifying for third-party recordkeeper status under 26 § 7609(a)(3)(A). *Smith v. United States*, 592 F.Supp. 753 (D.Conn.1984); *Godwin v. United States*, 564 F.Supp. 1209 (D.Del.1983). Because the court lacks subject matter jurisdiction, over this summons, the government no longer seeks its enforcement in this action.[8]

Accordingly, the Government's Motion to Dismiss is granted as to Rusty Hanna and Mini Spas.

### C. *GMAC and Lloyd Pitkin, Credit Manager*

The Government raises two contentions related to the GMAC summons: 1) Hanna's action to quash is improperly brought because GMAC is not a third-party recordkeeper for section 7609(a)(3) purposes, and 2) Hanna's action to quash is time-barred because it was not filed within the 20–day statutory time limitation commencing upon the date notice of service was sent by certified mail to Hanna's last known address. As stated above, the taxpayer's right to file a petition to quash arises solely when the summoned entity is a third-party recordkeeper. Therefore, the timeliness of Hanna's petition is relevant to the court's subject matter jurisdiction only in the event the court should find GMAC is a third-party recordkeeper.

■ The Government argues this summons requests information related to Hanna's financing the purchase of a vehicle through GMAC, the records of which are not the type that gives their holder a third-party recordkeeper status as defined in 26 U.S.C. § 7609(a)(3) and interpretative caselaw. *See Organtini*, 84–1 U.S.T.C. § 9281; *United States v. Shivlock*, 459 F.Supp. 1383 (D.Colo.1978), *aff'd*, 612 F.2d 1224 (10th Cir.1979). "Where the records sought are the company's own business, rather than records of the petitioner, then that company is not a third-party recordkeeper." *Organtini*, 84–1 U.S. Tax Cas. (CCH) para. 9281 at 83,594 (citations omitted). The Government does not dispute GMAC is financing the purchase of Hanna's vehicle through an extension of GMAC credit, but rather contends GMAC is deprived of its third-party recordkeeping status because it created and maintains for its own purposes the records at issue. Hanna finds no such fine distinctions in his reading of subsection (C). He contends that even if the records belong to GMAC and are not records kept by GMAC for Hanna, GMAC may still be a third-party recordkeeper as defined by statute. Section 7609(a)(3)(C) explicitly defines a third-party recordkeeper as "any person extending credit through the use of credit cards or similar devices." Hanna argues the extension of credit by the summoned entity to the petitioning taxpayer should be the element essential to finding third-party recordkeeping status under subsection (C), and the debtor/creditor relationship existing between Hanna and GMAC falls squarely within the statute's parameters.

The court observes that Hanna cites no authority or facts in support of his position, and therefore fails in his burden of proving GMAC has third-party recordkeeper status. The government cites *Smith v. United States* wherein the court examined the

---

**8.** The United States intends to institute a separate action for enforcement of the Rusty J. Hanna and Mini Spas summons pursuant to 26 U.S.C. §§ 7602 and 7604.

question whether GMAC is a third-party recordkeeper and, without analysis, determined it did not fit the statutory definition. 84–1 U.S. Tax Cas. (CCH) para. 9504 (D.Md.1984). In the absence of express language on this question and upon its reading of the statute, the court is persuaded section 7609(a)(3)(A) does not include within its definition of a third-party recordkeeper, an entity that merely finances the purchase of consumer goods. Subsection (A) gives third-party recordkeeper status to traditional lending institutions, and subsection (C) to "any person extending credit through the use of credit cards or similar devices." Clearly, as a seller in a purchase agreement, GMAC is not a traditional lending institution. Nor is a purchase agreement a device similar to a credit card for purposes of this statute. Perusal of the cases arising under subsection (C) shows that the "similar devices" provision relates to entities such as telephone companies that extend credit by the use of calling cards that are essentially credit cards. *United States v. New England Tel. and Tel. Co.,* 575 F.Supp. 138 (D.C.R.I.1983); *United States v. New England Tel. Co.,* 530 F.Supp. 274 (D.C.N.H. 1981). The two subsections covering extension of credit are sufficiently specific to indicate that if Congress had intended to include within the definition sellers under routine purchase agreements, it would have done so in explicit terms. Therefore, the court is disposed to rule GMAC is not a third-party recordkeeper, the consequence of which ruling deprives the court of subject matter jurisdiction over Hanna's petition to quash the GMAC summons and moots the issue of the timeliness of Hanna's Petition to Quash.

■ However, even if the court were to rule GMAC should be considered a third-party recordkeeper, Hanna's petition to quash the GMAC summons would be time-barred for late filing. As stated in the recitation of facts, Agent Conlin served Lloyd Pitkin at GMAC with attested copies of the summons on October 8, 1985 and sent notice thereof to Hanna's last known address the same day. Hanna filed his Motion to Quash the GMAC summons on October 30, 1985, two days after the expiration of the 20–day filing period running from the date of notice. Some dispute exists as to whether, under section 7609(b)(2)(A), the 20–day period during which a taxpayer may commence an action to quash runs from the date the notice was sent or from the date it was received. Strictly construing that statute, several courts have held that a petition to quash an IRS summons issued to third-party record keeper was not timely filed where it was not filed until more than 20 days after the date on which the notice was *sent* by certified mail. *Maikranz v. United States,* 612 F.Supp. 590 (D.C.Ind.1985); *Franklin v. United States,* 581 F.Supp. 38 (D.C.Mich. 1984); *Riggs v. United States,* 575 F.Supp. 738 (D.C.Ill.1983) (Action to quash was time-barred when filed on the 21st day after the notice was mailed even though the taxpayer appeared at the district court clerk's office to file on the last day of the limitations period but was denied assistance in filling out the cover sheet); *see Bilodeau v. United States,* 577 F.Supp. 234 (N.H.1983) (dismissed Motion to Quash filed on the twenty-first day); *contra Fogelson v. United States,* 579 F.Supp. 573 (D.C.Kan.1983) (The 20–day period commences upon receipt of the notice); *Grisham v. United States,* 578 F.Supp. 73 (D.C. N.Y.1983) (The district court is without jurisdiction over a taxpayer's petition to quash when the taxpayer fails to file it within 20 days after receiving notice of the third-party recordkeeper status).

Where the Tenth Circuit has not spoken on this issue, the court looks for guidance to other jurisdictions that have addressed the question and finds convincing the holding that the 20–day period starts to run when the notice is mailed. The sound reasoning of that position is stated by the *Riggs* court:

[It] is too early in TEFRA's life for the matter to have received Court of Appeals scrutiny. But the United States cites a number of District Court decisions that have started the time clock running when

the notice is mailed, and this Court has seen only one case applying (and without analysis at that) the later date on which the notice is received. What controls, of course, is that the plain language of the statute compels the former result. . . .

. . . .

Were actual *delivery* of the notice required, the statutory provisions as to 'sufficien[cy]' and 'last known address' would be both unnecessary and meaningless.

*Riggs*, 575 F.Supp. at 740, 741 (emphasis in original; footnotes omitted); *accord Brohman v. Mason*, 587 F.Supp. 62 (W.D.N.Y. 1984).

*Riggs* further noted the allowance of the 20–day period for filing petitions to quash amounts to a waiver of its sovereign immunity by the Government, *Riggs*, 575 F.Supp. at 741, and *Maikranz* dismissed a petition to quash that was filed 22 days after notice of the summons was sent on the grounds that the Government's waiver of its sovereign immunity terminated on expiration of the 20–day period. *Maikranz*, 612 F.Supp. 590.

This court concurs with the above analysis and is not moved from its position by Hanna's contention that the Government purposefully "fanned out" the summonses by not serving them simultaneously, thereby forcing Hanna to wait two days beyond the 20–day period to see how many summonses would be served before amending his petition. Allowance of such a defense would ignore the clear language of the statute and undermine its purpose, which is to eliminate delay in summons compliance while preserving the rights of the taxpayer. S.Rep. No. 494, 97th Cong., 2d Sess. 282, *reprinted in* 1982 U.S.Cong. & Ad. News 781, 1028. The court finds no evidence of bad faith or defective service and therefore rejects Hanna's defense related thereto. The court further rejects Hanna's argument that the amendment of his Petition to Quash on the 22nd day after notice was sent relates back to the date of filing of the original so as to place the GMAC petition within the 20–day period. Hanna's statutory right to respond within the 20–day period applies to the summonses individually, and the period begins to run for each summons on the date notice of it is sent irrespective of the number of other summonses issued or the dates their notices are sent. Consequently, to meet the 20–day limitation, Hanna should have filed a separate petition to quash the GMAC summons or added GMAC to his petition within the 20–day period following its filing, and late amendment of the original petition was insufficient to satisfy the section 7609(b)(2)(A) requirement for timeliness of filing.

Accordingly, the court lacks subject matter jurisdiction with respect to this summons and therefore, grants the Government's Motion to Dismiss as to GMAC.

### D. *Continental*

Inasmuch as the Government does not dispute Continental's status as a third-party recordkeeper as defined in 26 U.S.C. 7609(a)(3)(A), the court will turn its attention to the timeliness of Hanna's Petition to Quash the Continental summons. On October 8, 1985, summons was served on Barbara Lund at Continental, and on the same day, notice of the summons was sent by certified mail to Hanna's last known address. Hanna's Amended Petition to Quash which added the GMAC and the Continental summonses was filed October 30, 1985, two days after termination of the 20–day filing period allowed under 26 U.S.C. 7906(b)(2)(A).

For reasons set out in its discussion of the timeliness of Hanna's petition to quash the GMAC summons, the court lacks subject matter jurisdiction over the Continental summons and the Government's Motion to Dismiss is granted as to Continental.

### E. *Valley National and Sheri Lance, Operations Manager*

■ The Government contends the court lacks subject matter jurisdiction over this summons because Valley National is not a third-party recordkeeper. Hanna counters that Valley National made a loan to Hanna and should be considered a traditional lending institution under 26 U.S.C.

§ 7906(a)(3)(A). Beyond his mere allegations Valley National is a lending institution that made a loan to him, Hanna offers no factual information, by affidavit or otherwise, to sustain his burden of proving it is a third-party recordkeeper. Therefore, the court rules Valley National is not a third-party recordkeeper for purposes of disposition of this action. However, the court notes the same result will be reached whether or not the court finds Valley National is a third-party recordkeeper because no articulable differences exist between this summons and the Sherwood summons. Addressing its decision whether summoned parties, similarly situated to the instant party, were third-party recordkeepers, the *Smith* court concludes,

> Even if Pacific Credit and GMAC could be shown to fit within the definition of third-party recordkeepers, the analysis would be the same as used below in the case of Pennsylvania Bank & Trust and the final result would be the same. The motion to quash issued to GMAC will be denied.

*Smith*, 84–1 U.S. Tax Cas. (CCH) para. 9504 at 84,314. *Smith* then applied the *Powell* analysis to the Pennsylvania Bank & Trust summons and determined that summons was proper. Correspondingly, this court finds no bad faith in the service of this summons for reasons outlined in its discussion of the Sherwood summons. Both are properly before the court, timely objected to by Hanna, and found sufficient under *Powell* standards. Further, Hanna raises no new defense in relation to Valley National that has not been addressed in connection with Sherwood. Consequently, regardless of its ruling on Valley National's status as a third-party recordkeeper, the same result would obtain, that is, Valley National would be required to produce the summoned information.

Therefore, for reasons stated in its discussion of the Sherwood summons, the court dismisses Hanna's Petition to Quash as to the Valley National summons.

**9.** Westport is located in Kansas City, Missouri, and, apparently, Hanna withdrew his claim that this court has jurisdiction over the Westport summons in recognition of the 26 U.S.C. 7604(a) provision laying jurisdiction for the enforcement of a summons with the district court for the district in which the summoned party resides.

**F.** *Westport*

Hanna withdrew his Motion to Quash as to the Westport summons, and the court need not consider it further.[9] Accordingly, the Government's Motion to Dismiss is granted as to Westport.

### IV

### Conclusion

The court grants the Government's Motion to Dismiss Hanna's Petition to Quash the summonses served on Rusty J. Hanna and Mini Spas, GMAC, Continental, Valley National and Westport. Hanna's Petition to Quash is denied as to Sherwood, and the court orders enforcement of the summons served on that entity.